## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PAUL GILLAN**                                    **CIVIL ACTION**

**VERSUS**                                          **NO.  12-2425**

**JERRY GOODWIN, WARDEN**                 **SECTION "F"(4)**

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.      <u>Factual and Procedural Background</u>**

The  petitioner, Paul Gillan ("Gillan") is a convicted inmate currently incarcerated in the David Wade Correctional Center in Homer, Louisiana.[2]  On November 27, 2000, Gillan and a co-defendant, Henry Harris, were each charged by Bill of Information in Orleans Parish with separate

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

counts of simple theft.[3]  Gillan and Harris each entered initial pleas of not guilty on December 4,

2000.[4]  The bill  of information was amended on January 11, 2001, to amend the charge to purse

snatching, to which Gillan again pleaded not guilty.[5]

The record reflects that, around 9:30 p.m. on September 25, 2000, Merwin Klein and Alice

Plaatje were walking to their hotel on Esplanade Avenue after dinner in the French Quarter.[6]  About

one block after they crossed Rampart Street, they were jumped by two men who approached them

from behind.  Klein turned so that he was struggling face-to-face with a man thirty to forty years

younger than himself; however, Klein outweighed the assailant by about seventy-five pounds.  The

two men tussled and fought on the ground, and Klein's pants and shirt were ripped as his wallet was

taken.  Klein was able to rip off the man's shirt in the fight.

Plaatje was simultaneously attacked by the other man, who took her purse and ran off.

Plaatje began screaming.  When nearby residents looked down from a balcony, she asked them to

call 9-1-1.

Officer Ronnie Voorhies and his partner, Officer Sal Battaglia, responded to the call.  The

victims described the attackers' and their clothing.  In the 1300 block of Columbus Street the

officers saw two men who matched the descriptions of the suspects.  When the officers stopped, one

man ran off and the officers were able to detain the other man.  They returned to the scene with the

---

[3]St. Rec. Vol. 2 of 5, Bill of Information, 11/27/00.

[4]St. Rec. Vol. 2 of 5, Minute Entry, 12/4/00; Minute Entry (Harris), 12/4/00.

[5]St. Rec. Vol. 2 of 5, Bill of Information, 11/27/00 (see handwritten amendment 1/11/01); St. Rec. Vol. 1 of 5, Trial Minutes, 1/11/11.

[6]The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Gillan*, 806 So.2d 184 (La. App. 4th Cir. 2001) (Table); St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2001-KA-1129, pp. 1-3, 12/19/01.

man and Plaatje identified him as her attacker.  She pleaded that she needed medication from her purse, and the attacker told the officers where the purse could be found.  Plaatje recovered the purse and most of her belongings.

Later that same night, Officer Patrick Conaghan went to their hotel room to present a photographic lineup.  Klein recognized Gillan's picture and identified him as the man who took the wallet.  Klein's wallet later was found in a garbage can, but all the contents had been removed.

The cases against Gillan and Harris were severed prior to trial on January 11, 2001.[7]  Harris was tried first before a jury, and was found guilty of attempted purse snatching.[8]  The Court eventually sentenced him as a multiple offender to serve life in prison at hard labor.[9]

Gillan was separately tried before a different jury, and was found guilty as charged of purse snatching.[10]  On March 12, 2001, the Trial Court sentenced Gillan to serve twenty (20) years in prison at hard labor.[11]  The State also filed a multiple offender bill to which Gillan entered a plea of not guilty.[12]  At the hearing held on March 27, 2001, the Trial Court adjudicated Gillan to be a third felony offender, and ultimately sentenced him on April 9, 2001, to serve life in prison at hard labor.[13]

---

[7]St. Rec. Vol. 1 of 5, Trial Minutes, 1/11/01; St. Rec. Vol. 3 of 5, Partial Trial Transcript, 1/11/01.

[8]St. Rec. Vol. 1 of 5, Trial Minutes (Harris), 1/11/01; St. Rec. Vol. 3 of 5, Partial Trial Transcript, 1/11/01.

[9]St. Rec. Vol. 1 of 5, Sentencing Minutes (Harris), 3/27/01; Corrected Minute Entry, 4/9/01.

[10]St. Rec. Vol. 1 of 5, Trial Minutes, 1/11/01; St. Rec. Vol. 2 of 5, Jury Verdict, 1/11/01; St. Rec. Vol. 3 of 5, Partial Trial Transcript, 1/11/01.

[11]St. Rec. Vol. 1 of 5, Sentencing Minutes, 3/12/01; St. Rec. Vol. 3 of 5, Sentencing Transcript, 3/12/01; St. Rec. Vol. 2 of 5, Motion for Reconsideration of Sentence, undated; Trial Court Order, 3/12/01.

[12]St. Rec. Vol. 1 of 5, Sentencing Minutes, 3/12/01; St. Rec. Vol. 2 of 5, Multiple Bill, 3/12/01.

[13]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 3/27/01; Corrected Minute Entry, 4/9/01; St. Rec. Vol. 3 of 5, Multiple Bill Hearing Transcript, 3/27/01, pp. 10-14, 3/27/01.

On direct appeal, Gillan's appointed counsel challenged the Trial Court's failure to advise Gillan at sentencing of the delays for filing post-conviction relief.[14]  The Louisiana Fourth Circuit affirmed Gillan's conviction and sentence finding that the failure to notify Gillan was not an enforceable right.[15]  The Court also found as an error patent on the record that the Trial Court failed to deny Gillan the benefits of parole, probation or suspension of sentence.  The Court resolved that the latter two benefits were statutorily unavailable to Gillan and that the benefit of parole, however, enured to Gillan's favor by proving a more lenient sentence which was not appealed by the State and could not be raised *sua sponte* by the Court.

Gillan did not seek rehearing or apply for review in the Louisiana Supreme Court.  His conviction and sentence became final thirty (30) days later, on Friday, January 18, 2002, when the time for doing so expired.[16]  *See Butler v. Cain,* 533 F.3d 314 (5th Cir. 2008) (citing *Roberts v. Cockrell,* 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final for AEDPA purposes when a state defendant does not timely proceed to the next available step in the state appeal process).

## II.   State Post-Conviction Proceedings

Almost nine months later, on October 15, 2002, Gillan submitted an application for post-conviction relief to the Trial Court raising two grounds of ineffective assistance of counsel:[17] (1) he was denied effective assistance of counsel when his counsel (a) failed to request a jury charge on

---

[14]St. Rec. Vol. 3 of 5, Appeal Brief, 2001-KA-1129, 7/9/01.

[15]*State v. Gillan*, 806 So.2d at 184; St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2001-KA-1129, 12/19/01; *see also*, St. Rec. Vol. 4 of 5, 4th Cir. Order, 2001-K-2136, 1/10/02 (denying as moot request to supplement appeal); 4th Cir. Writ Application, 2001-K-2136, 11/15/01.

[16]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[17]St. Rec. Vol. 2 of 5, Application for Post-Conviction Relief, dated 10/15/02.

the statutory definition of theft and have theft included as a responsive verdict, (b) failed to object to the evidence presented at the multiple bill hearing, (c) failed to object to discrepancies in the evidence at the multiple offender hearing; and (d) failed to object to the hearsay testimony of Officer Jay Jacquet at the multiple bill hearing; and (2) he was denied conflict-free counsel where counsel negotiated a plea agreement for Harris that would have been in exchange for Harris's testimony against him.  The Trial Court denied the application without stated reasons on November 8, 2002.[18]

Gillan sought review of this order in the Louisiana Fourth Circuit on December 2, 2002.[19] The Court denied the application on January 23, 2003, finding no error in the trial court's ruling.[20] Gillan then sought review in the Louisiana Supreme Court.[21]  On April 2, 2004, the Court granted the writ in part and remanded the matter to the Trial Court for appointment of counsel and a hearing only as to the claim related to the jury charge on theft and its inclusion as a responsive verdict.[22]  The Court denied the application in all other respects.

The Trial Court appointed counsel and, at a hearing held seven years later, on April 4, 2011, announced that relief was denied.[23]  In its reasoned, written opinion, the Court resolved that theft was a responsive verdict to the purse snatching charge.[24]  However, relying on the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and related state law, the Court further resolved

---

[18]St. Rec. Vol. 2 of 5, Trial Court Order, 11/8/02; St. Rec. Vol. 1 of 5, Minute Entry, 11/12/02.

[19]St. Rec. Vol. 4 of 5, 4th Cir. Writ Application, 2002-K-2463, 12/10/02 (dated 12/2/02).

[20]St. Rec. Vol. 4 of 5, 4th Cir. Order, 1/23/03.

[21]St. Rec. Vol. 4 of 5, La. S.Ct. Writ Application, 03-KH-636, 3/6/03 (dated 2/21/03).

[22]*State ex rel. Gillan v. State*, 869 So.3d 865 (La. 2004); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2003-KH-0636, 4/2/04; La. S. Ct. Order, 2003-KH-636, 5/6/11 (denying motions to enforce).

[23]St. Rec. Vol. 4 of 5, Minute Entry, 4/4/11; St. Rec. Vol. 5 of 5, Post-Conviction Hearing Transcript, 4/4/11.

[24]St. Rec. Vol. 4 of 5, Trial Court Per Curiam Order, 4/4/11.

that Gillan was not prejudice by any error by counsel because, under the facts of the case, there was no reasonable probability that a jury would have returned the responsive verdict.

The Louisiana Fourth Circuit denied Gillan's subsequent writ application on October 4, 2011, finding no error in the Trial Court's ruling.[25]   On June 15, 2012, the Louisiana Supreme Court also denied without stated reasons Gillan's subsequent writ application to that Court.[26]

## III.   <u>Federal Petition</u>

On October 1, 2012, the clerk of this Court filed Gillan's federal petition for habeas corpus relief in which he alleged that he was denied effective assistance of counsel on the following grounds:[27] (1) counsel was conflicted when he negotiated a plea deal for the co-defendant to testify against the petitioner; and (2) counsel failed to request a jury instruction and responsive verdict on theft.  The State filed a response in opposition arguing that Gillan's claims are without merit.[28]

## IV.   <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[29] applies to this petition, which is deemed filed in this Court no later than

---

[25]St. Rec. Vol. 5 of 5, 4th Cir. Order, 2011-K-0622 c/w 2011-K-0911, 10/4/11; 4th Cir. Order, 2011-K-0622, 7/28/11.  The lower numbered writ application involved Gillan's challenge to the Trial Court's denial of his request that the judge be recused.  *See* St. Rec. Vol. 4 of 5, Trial Court Judgment (recusal issue), 2/8/11.

[26]*State ex rel. Gillan v. State*, 90 So.3d 1057 (La. 2012); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2011-KH-2499, 6/15/12; La. S. Ct. Writ Application, 11-KH-2499, 11/9/11 (dated 10/31/11).

[27]Rec. Doc. No. 1.

[28]Rec. Doc. No. 12.

[29]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

September 13, 2012.[30]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The record reflects that Gillan's federal petition was timely filed.  In addition, his claims have been exhausted in the state courts and none of the claims are in procedural default.  The Court will proceed to the merits of Gillan's two claims.

**V.      Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court

---

[30]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Gillan's federal habeas petition on October 1, 2012, when the filing fee was received.  Gillian dated his original submission on September 13, 2012, which is the earliest date appearing in the record on which he could have presented the pleadings to the prison officials for mailing to the Court.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his *pro se* petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate did not pay the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 376).

findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410.  The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

8

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).   In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

**VI.    Ineffective Assistance of Counsel**

Gillan alleges that his counsel provided ineffective assistance when his counsel created a conflict by negotiating a plea deal for the co-defendant, whom he also represented, in return for testimony against the petitioner.  In addition, counsel failed to request a jury instruction on the definition of theft and to have theft included as a responsive verdict.

Gillan raised these arguments on state post-conviction review, which was denied at each level of the state courts.  The State argues that Gillan's claims are meritless and that the denial of relief was not contrary to Supreme Court law.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).  The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, applied by the Louisiana courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court

established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is

10

objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 792. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."

*Harrington*, 131 S.Ct. at 788.   The *Harrington* Court went on to recognize the high level of

deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and
> when the two apply in tandem, review is doubly so.   The *Strickland* standard is a
> general one, so the range of reasonable applications is substantial.   Federal habeas
> courts must guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable.   The question is whether there is any
> reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential."

*Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).   The federal

courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard

through the "deferential lens of § 2254(d)."   *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting

*Knowles*, 556 U.S. at 121 n.2).   In the instant case, Gillan has failed to establish that his counsel's

performance was objectively unreasonable or deficient under the circumstances of his case.

### A.      Conflict of Interest

Gillan alleges in his federal petition that his counsel negotiated a plea deal for the co-

defendant, Henry Harris, which would have called for Harris's testimony at trial against Gillan.[31]

He contends that this created a conflict of interest because counsel was appointed to represent both

Gillan and Harris.   As noted above, this claim was denied by the state courts at each level without

stated reasons.

"'Under the Sixth Amendment, if a defendant has a constitutional right to counsel, he also

has a corresponding right to representation that is free from any conflict of interest.'"   *Morin v.*

---

[31]Rec. Doc. No. 1, p.2.

Case 2:12-cv-02425-MLCF   Document 13   Filed 12/12/13   Page 13 of 18


*Thaler*, 374 F. App'x 545, 551 (5th Cir. 2010) (quoting *United States v. Vaquero*, 997 F.2d 78, 79 (5th Cir. 1993)). Although the traditional *Strickland* standard of review is outlined above, conflicts of interest arising from multiple representations is considered under the standards set forth in *Cuyler v. Sullivan*, 446 U.S. 335 (1980). *Beets v. Scott*, 65 F.3d 1258, 1265-66 (5th Cir. 1995) (en banc).

In *Cuyler*, the Supreme Court rejected the notion that "the mere possibility of a conflict of interest warrants the conclusion that the defendant was deprived of his right to counsel." *Cuyler*, 446 U.S. at 345. The Court reiterated its prior holding that there are circumstances under which an attorney can represent multiple criminal defendants in connection with the same criminal transaction without offending the Sixth Amendment. *Id.* The Court held that, where there is no objection at or before trial, counsel's representation will only give rise to a cognizable ineffective assistance claim if the representation "actually affected the adequacy of his representation." *Id.*, 446 U.S. at 349-50. If the petitioner establishes the existence of an actual conflict that hampered counsel's representation of him, then he need not prove further prejudice under the second prong of *Strickland*. *Morin*, 374 F. App'x at 551 (citing *Mickens v. Taylor*, 535 U.S. 162, 166 (2002)).

Thus, joint representation of co-defendants by a single attorney in a criminal case is not a *per se* violation of the Sixth Amendment. *Burger v. Kemp*, 483 U.S. 776, 783 (1987). The showing of a conflict must be "tightly bound to the particular facts," and not merely hypothetical, speculative, or potential in nature. *Id.*, at 551-52. An "actual conflict" exists under *Cuyler* when defense counsel is compelled to compromise his duty of loyalty or zealous advocacy to the accused by choosing between or blending the diverse or competing interests of a former or current client. *See Strickland*, 466 U.S. at 692. "Adverse effect" on the representation may be established with evidence that "some plausible alternative defense strategy or tactic" could have been pursued, but was not because

13

of the actual conflict impairing counsel's performance. *See Perillo v. Johnson*, 205 F.3d 775, 782 (5th Cir. 2000).

Although he does not provide this court with the details of his argument, in the state courts, Gillan indicated that, prior to the start of Harris's trial, the State offered Harris a plea deal where he would enter the plea of guilty to purse snatching in return for a 20 year sentence without the multiple offender bill. The plea would have required Harris to testify against Gillan. Harris wholly rejected the offer and proceeded to trial.

The record before this Court contains no such transcribed colloquy between the Trial Court, Harris and his counsel.[32] Nevertheless, Gillan indicates that the plea discussion occurred on the record prior to the start of Harris's trial. The cases against Gillan and Harris, however, already were severed prior to the start of their separate trial proceedings, with Harris's trial proceeding first. By the beginning of Gillan's trial, any perceived conflict had been avoided or cured. As noted by the State, Harris rejected the plea offer and proceeded to trial. He also did not testify at his own trial nor did he testify at Gillan's trial.

More importantly, Gillan has not pointed to any adverse impact that the joint representation, or alleged plea negotiation, had on his counsel's representation during his trial. He has not pointed to anything in the transcript or record to show that his defense was in anyway compromised by counsel or any failed loyalty to him. Furthermore, the evidence against Gillan was separately focused from that against Harris, where Gillan's conviction was based on his aggressive assault and taking from Merwin Klein within the same criminal act as Harris, whose victim was Alice Plaatje. There is nothing to indicate a compromise of counsel's representation.

_____

[32]Gillan's state court pleading contains a purported quote from the transcript of Harris's trial.

The Fifth Circuit has often noted that the state trial courts is "in a far better position to evaluate the credibility of witnesses, weigh the evidence, and determine if there was an actual conflict or any adverse effect from the alleged conflict of interest." *Hernandez v. Johnson*, 108 F.3d 554, 561 (5th Cir. 1997) (citing *Burger*, 483 U.S. at 785) ("The district judge, who presumably is familiar with the legal talents and character of the lawyers who practice at the local bar and who saw and heard the witness testify, is in a far better position than we are to evaluate a charge [that there was an actual conflict] ..."). The same is true in this case. The state courts summarily dismissed Gillan's claim of conflicted counsel giving it no credence.

Affording the state courts and Gillan's counsel the appropriate deference, Gillan has failed to point to an actual conflict that adversely impacted his defense or his counsel's representation. The state courts' denial of relief on this issue was neither contrary to nor an unreasonable application of Supreme Court law. He is not entitled to relief on this claim.

**B.**     **Jury Instruction and Responsive Verdict of Theft**

Gillan has not provided this Court with a detailed discussion of this next issue. Under a broad reading, he requests in his federal pleadings that this Court review the claims as they were presented to the state courts.[33] In reviewing the record, on state post-conviction review, Gillan argued that his counsel's performance was deficient in failing to object to the Trial Court's failure to instruct the jury on theft and include theft as a responsive verdict. This he argues was prejudicial because it deprived the jury of the opportunity to find him guilty of theft.

After the lengthy state post-conviction process, the state trial court denied relief on this claim under *Strickland* finding that, although theft should have been included as a responsive verdict,

---

[33]*See* Rec. Doc. No. 1, pp. 14-15.

Gillan had not shown prejudice or established that, but for counsel's failure to request theft as a responsive verdict, a reasonable probability existed that the jury would have returned theft as the verdict.[34]  The state court resolved that the evidence was more than sufficient to support the verdict of purse snatching and that there was no reasonable probability that a verdict of theft would have been returned.

As indicated, the state trial court agreed that Gillan was entitled to the inclusion of theft in the jury instructions and as a responsive verdict and that counsel should have requested its inclusion or objected to its exclusion.  This notwithstanding, the federal courts have found that trial counsel sometimes strategically avoid inclusion of a responsive verdict where there inclusion would not serve their client's interest.

> A decision to forgo a charge on lesser included offenses is strategic in nature. Strategic choices made after reasonable investigation will seldom if ever be found wanting, because we are reluctant to second-guess matters of trial strategy simply because the chosen strategy has failed.

*Lake v. Portuondo*, 14 F. App'x 126, 128 (2nd Cir. 2001) (internal citations and quotation marks omitted); *see also*, *United States ex rel. Webster v. DeTella*, 965 F. Supp. 1124, 1132-33 (N.D. Ill. 1997) ("As for the decision not to offer a jury instruction on a lesser included offense, that is within the realm of trial strategy, an area in which Monday morning quarterbacking is discouraged.").

This type of strategy may be validly employed if defense counsel believes that he can establish reasonable doubt with respect to the charged offense leaving the jury to vote for acquittal rather than a responsive verdict.  *Parker v. Cain*, 445 F. Supp.2d 685, 709 (E.D. La. 2006) (Duval, J.).

---

[34]St. Rec. Vol. 4 of 5, Trial Court *Per Curiam* Order, p. 6, 4/4/11.

>Submission of lesser included offenses may give the jury a basis for finding a defendant guilty of a crime where the prosecution was unable to prove the elements of the original crime charged beyond a reasonable doubt. Counsel may have appropriately wished to avoid this possibility and this decision therefore did not constitute ineffective assistance of counsel.

*Colon v. Smith*, 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989); *see also*, *Smith v. Terrell*, No. 09-3791, 2009 WL 4799190, at *7 (E.D. La. Dec. 7, 2009) (Zainey, J.) (order adopting report).

Nevertheless, even if counsel should have requested theft as a responsive verdict under state law, Gillan has not met the second prong of *Strickland* by showing prejudice resulting from the failure to include theft as a responsive verdict. Gillan has not pointed to anything in the record that would suggest that result of the proceeding would have been different, *i.e.* the jury would have returned guilty of theft as their verdict.

As resolved by the state courts, the facts at trial established that Klein and Plaatje were jumped from behind as they returned to their hotel on the night of September 25, 2000.[35] Klein identified Gillan as the man with whom he struggled, fought and wrestled on the ground. Klein's shirt and pants were ripped by Gillan in the successful effort to take Klein's wallet from his pocket. The Trial Court resolved that this was sufficient to establish the essential elements of purse snatching in light of Gillan's knowledge that he was taking a wallet and the force used to secure the wallet which contained things of value, including a credit card, papers, and pictures.[36] With the facts

---

[35]St. Rec. Vol. 4 of 5, Trial Court *Per Curiam* Order, 4/4/11 (citing Louisiana Fourth Circuit's appellate opinion) (*see*, St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2001-KA-1129, pp. 1-3, 12/19/01).

[36]*Id.* Purse snatching was defined at the time under La. Rev. Stat. Ann. § 14:65.1 as "the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon."

adduced at trial, Gillan has offered nothing to suggest that the jury's verdict would have been changed with the inclusion of lesser offense of theft as a responsive verdict.[37]

For these reasons, the state courts' denial of relief was not contrary to, or an unreasonable application of, *Strickland*.  Gillan is not entitled to relief on this claim.

## VII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Gillan's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[38]

New Orleans, Louisiana, this 11th day of December, 2013.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[37]For clarity, theft at the time was defined under La. Rev. Stat. Ann. § 14:67 as "the misappropriate or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations.  An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential."

[38]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.