**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PAUL GILLAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2425** |
| **JERRY GOODWIN, WARDEN** | **SECTION "F"(4)** |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

On December 12, 2013, the undersigned United States Magistrate Judge issued a Report and Recommendation recommending the dismissal with prejudice of petitioner Paul Gillan's 28 U.S.C. § 2254 habeas petition in which he raised two grounds for relief:[1] (1) counsel was conflicted when he negotiated a plea deal for the co-defendant to testify against the petitioner; and (2) counsel failed to request a jury instruction and responsive verdict on theft. The recommendation of dismissal was based on the undersigned Magistrate Judge's findings that Gillan failed to establish that the denial of relief by the state courts was contrary to or an unreasonable application of Supreme Court precedent. This conclusion was reached after a thorough and complete review of the state court pleadings, this Court's record, and the appropriate standards of review applicable to claims of ineffective assistance of counsel.

The District Judge adopted the report and dismissed Gillan's petition with prejudice on January 2, 2014.[2] The Court eventually granted Gillan's motion for relief from that judgment to

---

[1] Rec. Doc. Nos. 1, 13.

[2] Rec. Doc. Nos. 14, 15.

allow consideration of his objections timely mailed to the Court and received by the clerk of court after judgment was issued.[3]

In the objections, Gillan suggests that the Court failed to address his motion to supplement the petition which inhibited his ability to present supporting documentation and additional argument related to his first claim, charging counsel with a conflict of interest.[4] The District Judge has referred these objections to the undersigned for issuance of a Supplemental Report and Recommendation. The District Judge stated that the undersigned is to address "the merits of the evidence and arguments advanced by Gillan regarding his motion to supplement the record before the magistrate and in his objections; of particular interest to the Court are the effect of the transcript submitted by Gillan which he claims was not reviewed, and consideration of the applicability of *Holloway v. Arkansas*, 435 U.S. 475 (1978), *Baty v. Balkcom*, 661 F.2d 391 (5th Cir. 1981), and *Ruffin v. Kemp*, 767 F.2d 748 (11th Cir. 1985) regarding conflict of interest."[5]

In addition to his objections, Gillan has presented a new Motion to Supplement (Rec. Doc. No. 21), filed June 23, 2014, well-after his objections were filed and after the instant referral. A reading of the motion reflects that Gillan is actually supplementing his objections as well as augmenting his original brief in support of his petition.[6] To afford the Court a full review of these additional arguments, the Motion to Supplement should be granted and its contents will be considered to the extent necessary in the following discussion.

---

[3]Rec. Doc. Nos. 17, 18, 19.

[4]Rec. Doc. No. 17.

[5]Rec. Doc. No. 20.

[6]*See* Rec. Doc. No. 21.

The Court also reiterates all of the standards of review, findings, conclusions, and recommendations which were thoroughly discussed in the prior Report and Recommendation (Rec. Doc. No. 13) and which are adopted as if fully restated herein. Before proceeding, the Court notes that Gillan has not objected to the Court's Report and Recommendation with respect to his second claim related to the jury instruction and responsive verdict of theft. For the reasons set forth in the original Report, this claim should be denied and dismissed with prejudice without further consideration.

## I. <u>Gillan's First Motion To Supplement Application (Rec. Doc. No. 1, p. 14)</u>

On October 1, 2012, the clerk of this Court filed Gillan's form petition for habeas corpus relief in which he listed two grounds of ineffective assistance of counsel:[7] (1) "Petitioner was denied his Sixth Amendment right to counsel where trial counsel represented an actual conflict of interest. . . . Petitioner's trial attorney negotiated a deal for one of his clients to testify against petitioner whom the same attorney represented;" and (2) "Petitioner was denied his Sixth Amendment right to counsel within the meaning of the U.S. Supreme Court decision in Strickland v. Washington. . . . Trial Court failure to request proper jury instruction prejudice the defense."[8] The form instructs the litigant to "*<u>concisely</u>*" (emphasis in original) state the factual basis of each claim.[9] Gillan did this in the quoted allegations above.

The form also instructs the litigant to "attach pages stating additional grounds and facts."[10] Again, Gillan did exactly that. He prepared a Motion to Supplement Application (Rec. Doc. No.

---

[7]Rec. Doc. No. 1, p. 2.

[8]Rec. Doc. No. 1, p. 2 ¶5.

[9]*Id.*

[10]Rec. Doc. No. 1, p. 2 ¶5.

1, p. 14) with a memorandum in support, and attached to that motion was his five page memorandum (Rec. Doc. No. 1, pp. 9-13). Because Gillan did not need leave of court to file the memorandum at that juncture, the moot motion was not separately docketed by the clerk (which would have called for a ruling by the Court) and the memorandum was filed as an attachment to the form petition.

Without doubt, the undersigned considered the memorandum in its prior Report and Recommendation when outlining Gillan's arguments and resolving his claims. Gillan's suggestion that this Court ignored or overlooked his memorandum is presumptive and certainly baseless. To the extent Gillan suggests that he intended to file some additional supplemental brief or exhibits, he made no such intent known until his objections to the Report and Recommendation.

Furthermore, the undersigned was privy to the entire certified copy of the state court record which contained all of the pleadings necessary for this Court to resolve his claims. As the reviewing Court is well aware, review under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011). There are no additional exhibits that Gillan could present here that were not already part of the state court record thoroughly reviewed and relied upon by this Court.

To that end, as referenced in the initial Report and Recommendation, the undersigned considered Gillan's state post-conviction pleadings, including the replication and summary of the transcript attributed to the co-defendant, Henry Harris's acceptance of a plea offer from the State. The Court reviewed the pages that purported to be from Harris's undated and incomplete plea discussions with the state court (as noted at Rec. Doc. No. 13, p.14 & n.32) and which is now presented again, in better form and still undated and incomplete, as an attachment to Gillan's supplemental memorandum (Rec. Doc. No. 21, pp. 31-33). The undersigned reviewed the colloquy

provided, assessed its relevance and factual content as needed to resolve Gillan's ineffective assistance of counsel claim. Gillan's suggesting that it was ignored or overlooked is spurious.

In the prior Report and Recommendation, this Court recognized and accepted that Harris's plea negotiations occurred, and resolved that, under the proper standards of review (addressed again *infra*), Gillan had not established his entitlement to federal habeas relief as a result. Gillan's offer of a better copy of the transcript exchange with Harris does not alter the recommendation of dismissal. His objection in this regard is factually erred and must be overruled.

## II. <u>The Proper Standard of Review under Supreme Court Precedent</u>

Gillan has also peaked the reviewing Court's interest with his citations to *Holloway*, 435 U.S. at 475, *Baty*, 661 F.2d at 391, and *Ruffin*, 767 F.2d at 748 as applied to a claim of counsel's conflict of interest. The simple answer is, these cases do not apply in Gillan's case for the following reasons.

As previously reported, the consideration of the issue of ineffective assistance of counsel, including allegations of conflict of counsel, is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009); *United States v. Infante*, 404 F.3d 376 (5th Cir. 2005) ("The determinations whether a conflict existed and whether the conflict had an adverse effect are mixed questions of law and fact."). A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as

determined by the United States Supreme Court. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 787 (2011) and *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

In the prior Report and Recommendation, the Court was called upon to address standards of review in considering Gillan's conflict of interest claim. First and foremost, the Court had to address the two prong standard of review for ineffective assistance of counsel claims provided by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).[11] With specific focus on the allegation of a conflict of interest, the Court outlined the standard set forth in *Cuyler v. Sullivan*, 446 U.S. 335 (1980) as the proper standard for review of Gillan's claim.[12] *See Beets v. Scott*, 65 F.3d 1258, 1265-67 (5th Cir. 1995) (en banc). For ease of reference, the Court repeats the following summary of that standard.

[11]Rec. Doc. No. 13, pp. 10-12. The standard has not changed since the issuance of the prior Report.

[12]Rec. Doc. No. 13, pp. 12-14.

In *Cuyler*, the Supreme Court rejected the notion that "the mere possibility of a conflict of interest warrants the conclusion that the defendant was deprived of his right to counsel." *Cuyler*, 446 U.S. at 345. The Supreme Court reiterated its prior holding that there are circumstances under which an attorney can represent multiple criminal defendants in connection with the same criminal transaction without offending the Sixth Amendment. *Cuyler*, 446 U.S. at 345. Under *Cuyler*, joint representation of co-defendants by a single attorney in a criminal case is not a *per se* violation of the Sixth Amendment. *See Burger v. Kemp,* 483 U.S. 776, 783 (1987). The *Cuyler* court held that, where there is no objection by counsel at or before trial, counsel's representation will only give rise to a cognizable ineffective assistance claim if the representation "actually affected the adequacy of his representation." *Cuyler,* 446 U.S. at 349-50.

An "actual conflict" exists under *Cuyler* when defense counsel is compelled to compromise his duty of loyalty or zealous advocacy to the accused by choosing between or blending the diverse or competing interests of a former or current client. *See Strickland*, 466 U.S. at 692. "Adverse effect" on the representation may be established with evidence that "some plausible alternative defense strategy or tactic" could have been pursued, but was not because of the actual conflict impairing counsel's performance. *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). If the petitioner establishes the existence of an "actual conflict" that had an adverse effect on counsel's representation of him, then he has shown sufficient prejudice. *Morin v. Thaler*, 374 F. App.'x 545, 551 (5th Cir. 2010) (citing *Mickens v. Taylor,* 535 U.S. 162, 166 (2002)). The showing of an adverse conflict, however, must be "tightly bound to the particular facts," and are not merely hypothetical, speculative, or potential in nature. *Morin*, 374 F. App.'x at 551-52 (citing *Perillo*, 205 F.3d at 782).

The foregoing standard clearly makes no mention of *Holloway* or its progeny, like *Baty* and *Ruffin*, because those cases do not apply to the facts of Gillan's claims. The United States Fifth Circuit has provided the following distinction for those cases, like Gillan's, in which *Cuyler* (referred to by the Fifth Circuit as *Sullivan*) applies and those where *Holloway* is the controlling standard:

> Lee argues that the court should have applied the standard developed in *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed.2d 426 (1978), which requires automatic reversal where counsel is forced to represent codefendants over his timely objection to the joint representation. 435 U.S. at 485-88, 98 S. Ct. 1173; *see also Mickens v. Taylor*, 535 U.S. 162, 168, 122 S. Ct. 1237, 152 L. Ed.2d 291 (2002). The State argues that *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed.2d 333 (1980), instead provides the relevant standard. 446 U.S. at 348-49, 100 S. Ct. 1708. *Sullivan* requires that the petitioner show not only that counsel was conflicted, but that the conflict adversely affected the adequacy of his representation. *Id*.; *see also United States v. Infante*, 404 F.3d 376, 390-92 (5th Cir. 2005). Every court that has reviewed Lee's claims, including the state appellate court, whose decision we review, has determined that *Sullivan*, and not *Holloway*, provides the operative standard. We agree.
>
> *Holloway* applies only if an attorney has been made to provide conflicted counsel over his own objection. *See Mickens*, 535 U.S. at 168, 122 S. Ct. [at] 1237 ("*Holloway* . . . creates an automatic reversal rule only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict.") (emphasis added); *cf*. *Holloway*, 435 U.S. at 488, 98 S. Ct. 1173 ("[W]henever a trial court improperly requires joint representation over timely objection reversal is automatic."); *Salts v. Epps*, 676 F.3d 468 (5th Cir. 2012) ("*Holloway*'s rule -- not [*Sullivan*'s] actual-conflict standard -- controls the [petitioners'] joint-representation claim in this case because the [petitioners, through their lawyers,] timely objected to their joint representation.").

*Lee v. Cain*, 519 F. App'x 869, 878 (5th Cir. 2013).

As referenced by the Fifth Circuit, the Supreme Court itself has directed that "*Holloway* . . . creates an automatic reversal rule **only** where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." (emphasis added) *Mickens*, 535 U.S. at 168. In Gillan's case, there is nothing in the record to suggest that

counsel or Gillan objected to the dual representation on grounds of conflict of counsel to trigger the *Holloway* standard of review.

The relevance of *Baty* and *Ruffin* is even more tenuous. The Supreme Court has in recent months clarified its decree that "'[c]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of this Court's decisions.'" *White*, 134 S. Ct. at 1702 (quoting *Howes v. Fields*, __ U.S. __, 132 S. Ct. 1181, 1187 (2012)) (internal quotation marks omitted); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The Court also reiterated its earlier caution to the lower federal courts regarding use and expansion of its clearly established law: "[a]s we cautioned the Sixth Circuit two Terms ago, a lower court may not 'consul[t] its own precedents, rather than those of this Court, in assessing' a habeas claim governed by § 2254." *White*, 134 S. Ct. at 1702 n.2 (citing *Parker v. Matthews*, 567 U.S. __, __, 132 S. Ct. 2148, 2155, 183 L. Ed.2d 32 (2012) (per curiam)). Thus, the legal interpretations and internal holdings of *Baty* and *Ruffin* do not constitute the clearly established law that must be applied here.

These opinions are of no assistance to the Court's analysis for several other reasons. In *Baty*, on which the *Ruffin*[13] court relied in part, the Fifth Circuit resolved that, based on certain language in *Holloway*, the Supreme Court in *Cuyler* "did not mean to impose a standard requiring proof of adverse effect on counsel's representation." *Baty*, 661 F.2d at 397. The Fifth Circuit concluded that "the standard imposed by the Supreme Court in *Cuyler* is met by proof of an actual conflict of interest." *Id.*, 661 F.2d at 397.

---

[13]In *Ruffin*, the Eleventh Circuit also recognized that the Supreme Court through *Cuyler* required a habeas petitioner to prove an actual conflict and an adverse impact, in spite of its citation and reference to the Fifth Circuit's contrary opinion in *Baty*. *Ruffin*, 767 F.2d at 751-52. In that decision, of little precedential value to this Court, the Eleventh Circuit resolved that an attorney's split-loyalties in plea negotiations created an "adverse effect" justifying relief for a habeas petitioner where counsel negotiated a plea for one client/defendant, which called for his testimony against the other, which arguably precluded his ability to negotiate on behalf of that other client/defendant. *Id.*

The *Baty* resolve that a petitioner need not show adverse effect is contrary to the Fifth Circuit's current interpretation and application of the *Cuyler* standard. *See Lee*, 519 F. App'x at 878. Most significant is the fact that the *Baty* resolve related to adverse effect is **opposite** to that of the Supreme Court itself, where the Supreme Court has made clear that under *Cuyler*, "it [is] at least necessary, to void the conviction, for [a] petitioner to establish that the conflict of interest adversely affected his counsel's performance." (emphasis added) *Mickens*, 535 U.S. at 174.

Thus, the undersigned did not turn a "blind eye" and it certainly is not "total error" for this Court to apply the standards of *Cuyler v. Sullivan* to the facts of Gillan's case.[14] It is the Supreme Court that commands in *Cuyler* and its progeny that petitioner's like Gillan establish an actual conflict and adverse impact from counsel's performance to vitiate a conviction based on claim that counsel had a conflict of interest arising from dual representation.

For the reasons detailed in the prior Report and Recommendation, Gillan has not met that burden in the state courts, or here, and has not established that denial of relief on his claim was contrary to or an unreasonable application of Supreme Court law. His objections and supplemental brief provide no reasons to alter this Court's application of *Cuyler* to deny him relief.

Consider for example the *Ruffin* case, also relied upon by Gillan. In that case, the Eleventh Circuit, in spite of its citation and reference to the Fifth Circuit's contrary holding in *Baty*, recognized that the Supreme Court through *Holloway* and *Cuyler* required a habeas petitioner to prove both an actual conflict and an adverse impact. *Ruffin*, 767 F.2d at 751-52. The Eleventh Circuit resolved that the attorney's split-loyalties in that case during plea negotiations created an "adverse effect" justifying relief where counsel had negotiated a plea for one client/defendant, which

[14]Rec. Doc. No. 17, pp. 7, 8.

called for testimony against the other. *Id*. The Eleventh Circuit decided that, because of the defendants' common actions and roles in the same charges against the same victims, the negotiations precluded counsel's ability to negotiate on behalf of the other client/defendant. *Id*. This is <u>not</u> the case with respect to Gillan and Harris.

As an initial concern, the Court reiterates that the factual holdings of and legal interpretations by the Eleventh Circuit in *Ruffin* are not that of the Supreme Court to be relied in under a § 2254 analysis. *See White*, 134 S. Ct. at 1702 n.2. Nor would it be considered precedential within the Fifth Circuit. Nevertheless, the *Ruffin* decision does not alter the Court's finding that Gillan is not entitled to federal habeas relief.

While at first glance, as Gillan suggests, the facts in *Ruffin* appear similar to the facts before this Court in Gillan's case, they are not. In *Ruffin*, the co-defendants both engaged in the same robbery and kidnapping of the same two victims and the murder of one of the victims. Both defendants were charged for their involvement in these crimes in the same counts.

In Gillan's case, however, as mentioned in the prior Report and Recommendation, Gillan was only charged with the robbery of Merwin Klein and Harris was only charged with the robbery of Alice Plaatje in separate counts in the bill of information.[15] Unlike the co-defendants in *Ruffin*, the record does not demonstrate that a plea negotiated for Harris (even with a promise of favorable testimony) would have prevented negotiations for Gillan's separate and distinct charge/count. Gillan has not demonstrated an adverse affect or impact on counsel's performance on his behalf.

Gillan also can not rest his claim on the suggestion that the state trial court should have recognized the conflict knowing that counsel represented both defendants. The Supreme Court

---

[15]St. Rec. Vol. 2 of 5, Bill of Information, 11/27/00.

would still require that Gillan prove the adverse affect on counsel's performance. Specifically, the Supreme Court has resolved that whether a trial judge is unaware of the conflict or is aware and fails to inquire about the conflict, prejudice to the defendant will be presumed only if the conflict has significantly affected counsel's performance. *Mickens*, 535 U.S. at 172-73 (citing *Cuyler*, 446 U.S. at 348-349). The Supreme Court reasoned that "[t]he trial court's awareness of a potential conflict neither renders it more likely that counsel's performance was significantly affected nor in any other way renders the verdict unreliable." *Id.*, at 173 (citing *United States v. Cronic*, 466 U.S. 648, 662 n.31 (1984)).

The Supreme Court has made clear that, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-787. This Court can not conclude that the state courts lacked justification in denying relief in the extreme manner suggested in *Harrington*. The Supreme Court has held that an unreasonable application of federal law as determined by its holdings, must be "'objectively unreasonable,'" and not merely wrong or even clear error. *White*, 134 S. Ct. 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).

Under the guidance of *Cuyler* and the other Supreme Court precedent addressed above and cited in the prior Report, Gillan has not established he is entitled to federal habeas relief. That is, he has not shown that the denial of relief was either contrary to or an unreasonable application of Supreme Court law. In reaching this conclusion, the Court reiterates its findings. Counsel represented both Gillan and Harris in pretrial proceedings and in their separate trials. Counsel

engaged in plea discussions on behalf of Harris after the trials were severed and prior to the start of Harris's trial. A plea agreement was never reached between Harris and the State. Harris did not testify at his own trial nor did he testify at Gillan's trial.

There is no established adverse affect from the joint representation by counsel or from the plea negotiation for Harris. There is nothing in the transcripts or the record to establish that Gillan's defense was compromised in anyway by counsel's actions or that counsel demonstrated any failed loyalty to him in proceeding to trial. Unlike Harris, Gillan has not shown that he asked for plea discussions to be held before his trial or that counsel refused such a request. In addition, as mentioned previously, Gillan's conviction was based on his aggressive assault and taking from Klein. There is nothing to indicate a compromise of counsel's representation or failed loyalty to Gillan in defending against that charge. The evidence against Gillan was separately focused on a different victim and a different theft from that charged against Harris. The defenses were not in conflict in that regard. As such, there is no basis for this Court to find that the state courts erred in denying post-conviction relief to Gillan.

On the record before the Court, the state courts' denial of relief was not contrary to *Cuyler*, the proper precedent to be followed here, and was not an unreasonable application of federal law as that term is defined by the Supreme Court. Under the deferences due to counsel and to the state courts, Gillan has failed to establish his entitlement to federal habeas relief. His objections should be rejected.

## III. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Gillan's Motion to Supplement (Rec. Doc. No. 21) be **GRANTED**.

It is further **RECOMMENDED** that Gillan's Objections (Rec. Doc. No. 17) to the initial Report and Recommendation (Rec. Doc. No. 13) be **OVERRULED**.

It is further **RECOMMENDED** that Gillan's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** for the reasons addressed in the initial Report and Recommendation and this Supplemental Report and Recommendation.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[16]

New Orleans, Louisiana, this 10th day of September, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

[16] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.